IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:07-CV-447-GCM-DCK

| | |
|---|---|
| GLORIA BOOKER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion For Summary Judgment" (Document No. 8) and the Defendant's "Motion For Summary Judgment" (Document No. 10). The motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and are ripe for review. Having carefully considered the parties' briefs, administrative record, and applicable authority, the undersigned recommends that the Plaintiff's Motion for Summary Judgment be **DENIED**, that the Defendant's Motion for Summary Judgment be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**, based upon the following proposed findings of fact and conclusions of law:

## I. PROCEDURAL HISTORY

Plaintiff was born September 16, 1951, graduated from high school, is divorced, has one adult son, lives by herself in an apartment, and has past work experience as a nurse's aid at a nursing home (for over ten years, semi-skilled medium work) and as a waitress/cashier at Waffle House (for two years, semi-skilled light work). (AR 18, 21, 70, 90, 231-32, 238, 434). She is literate and

communicates in English. (AR 21, 69). She has a past history of alcohol "binge-drinking," cocaine addiction, and IV drug use, but reportedly regained sobriety after participating in substance abuse program in 1999-2000. (AR 15, 18-19, 153, 187, 209, 443). Her reported daily activities include attending classes at community college, attending church, watching television, microwaving her meals, taking care of her own finances, grocery shopping, smoking cigarettes, walking daily for exercise, visiting friends and relatives, reading for several hours, and taking care of her personal needs. (AR 21, 233, 455-458).

On December 23, 2003, Plaintiff filed applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging disability due to diabetes, back pain, and depression/anxiety. Plaintiff's applications were denied initially and on reconsideration. Upon request, Administrative Law Judge ("ALJ") K. Dickson Grissom held a hearing on June 14, 2006 at which Plaintiff (represented by counsel) and a vocational expert both appeared and testified. (AR 428-465). On August 23, 2006, the ALJ issued a decision, finding that Plaintiff was not disabled. (AR 13-23).

At step one, the ALJ found that Plaintiff had not performed any substantial gainful activity since her alleged onset date (AR 17, Finding 2). At steps two and three, he found that Plaintiff had medically determinable impairments consisting of diabetes, back pain, and depression/anxiety, but that these impairments did not meet or medically equal the criteria of any listed impairments. (AR 17-18, Findings 3, 4). He next determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with various exertional and non-exertional restrictions. (AR 18, Finding 5). The ALJ concluded that Plaintiff could not perform her past relevant work, but that based on her RFC, age, education, work experience, and the vocational expert's testimony, Plaintiff

could still perform a significant number of jobs existing in the national economy. These jobs included garment ripper, nut/bolt assembler (1,650 jobs in North Carolina, with 77,000 nationally), and companion (3,300 jobs in North Carolina, with 105,000 nationally). (AR 20, Findings 6-10; AR 462-63). The ALJ concluded that Plaintiff was not disabled for purposes of the Social Security regulations. (AR 22, Finding 11). On September 26, 2007, the Appeals Council denied Plaintiff's request for further review. Plaintiff has exhausted her administrative remedies, and the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of final decisions of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The Fourth Circuit defines "substantial evidence" as:

> being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986).

The Fourth Circuit has made clear that it is not for the reviewing court to re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of

fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (stating that "this court does not find facts or try the case *de novo* when reviewing disability determinations"); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). If Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

**A. Whether the ALJ's Assessment of the Plaintiff's Credibility is Supported by Substantial Evidence**

When assessing a Plaintiff's credibility, the ALJ must first determine whether objective medical evidence demonstrates the existence of medically determinable impairments that could reasonably cause the alleged pain. *Craig v. Chater*, 76 F.3d 585, 596 (4th Cir. 1996); 20 C.F.R. § 416.929. The ALJ then considers evidence of the intensity and persistence of the claimant's alleged pain. *Id.*; *Medina v. Astrue*, 584 F.Supp.2d 814, 822 (W.D.N.C. 2008). An ALJ need not accept a claimant's subjective complaints to the extent those complaints are inconsistent with objective medical evidence. *Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994).

When assessing a claimant's credibility, an ALJ considers: (1) the plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain, if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. *Craig*, 76 F.3d at 595. The ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*.

The ALJ found that Plaintiff had severe impairments, but that her allegations as to the degree of pain were not fully credible. (AR 21). He observed that she had not been fully truthful in responding to questions about her use of alcohol and her failure to follow up with prescribed detox treatment. (AR 21). Although she claimed to have ceased abusing alcohol in 1997, the ALJ noted Plaintiff was admitted to the hospital in 2005 after drinking heavily. (AR 19); see Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").[1] As the ALJ specifically noted, Plaintiff "was not always truthful as to when she did or did not cease drinking and whether she had or had not received additional detox treatment." (AR 21).[2]

Additionally, contrary to Plaintiff's testimony that she only attended college for six months, she indicated to the consulting examiner that she had attended college for one year (AR 233, 264). Regardless of whether Plaintiff attended for one semester or two, her ability to attend classes is inconsistent with her subjective complaints that she was unable to sit for significant periods of time due to leg or back pain. (AR 80, 81).

---

[1] The ALJ observed that Plaintiff was stabilized and that her discharge records from the Behavior Health Center indicated she was deemed competent, medically stable, and possessing "fair insight" at that time. (AR 19, 381).

[2] The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1)(C), 110 Stat. 852, amended the definition of "disability" under Title II of the Social Security Act to bar benefits for any individual whose disability is based on alcoholism. 42 U.S.C. 423(d)(2)(C). Title II now states: "An individual shall not be considered to be disabled for purposes of this [title] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(C).

The Plaintiff's ability to engage in a variety of daily activities, including walking for exercise, also supports the finding that her subjective complaints were not as severe as alleged. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (claimant's daily activities supported finding that his alleged impairments were not as severe as claimed); *Rogers v. Barnhart,* 204 F.Supp.2d 885 (W.D.N.C. 2002) ("the ALJ did not just rest on the absence of objective proof of pain ... but also considered plaintiff's activities of daily living") (citing *Mickles*, 29 F.3d at 921)). The ALJ observed that "one would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities." (AR 21).

As the ALJ noted, objective medical evidence indicated that Plaintiff's diabetes was stable, that her acid reflux was stable due to medication (Nexium), that back X-rays and an MRI revealed only mild to moderate symptoms of degenerative disc disease for which physical therapy was conservatively recommended. (AR 20; 267 "some numbness and tingling, but no weakness;" 401 ruling out "spinal stenosis;" 404-405 "lumbar alignment unremarkable" and "mild disc bulge"). As Plaintiff points out, Plaintiff received several steroid injections and anti-inflammatory medication, and a knee X-ray reflected "structures are intact and align normally." (AR 171, 408-412). "When considered with other information, the routine nature of a course of treatment may indicate that a condition is not as severe as a plaintiff's subjective complaints may otherwise indicate." *Viverette v. Astrue*, 2008 WL 5087419, *2 (E.D.N.C. November 24, 2008).

The evidence in this case shows Plaintiff was prescribed conservative treatment and that her pain was controlled by medication and a few injections. *Gross*, 785 F.2d at 1166 ("If a symptom can

be reasonably controlled by medication or treatment, it is not disabling."); *Mann v. Astrue*, 2008 WL 906346, at *16 (S.D.W.Va. Mar. 31, 2008) (explaining that the ALJ properly considered the record in evaluating claimant's credibility, including the conservative course of treatment). The ALJ reviewed all the evidence and noted that Plaintiff had received successful treatment for other temporary problems, including pneumonia and an abdomen infection. (AR 19).[3] The ALJ's finding that Plaintiff's subjective complaints were not entirely credible was supported by substantial evidence of record, including Plaintiff's inconsistent statements, activities of daily living, the effectiveness of her medications, and the medical treatment received by Plaintiff. (AR 18-21).

The ALJ properly relied upon all this evidence when assessing the credibility of Plaintiff's subjective complaints. "It is the province of the [ALJ], and not the courts, to make credibility determinations." *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir.1994). The ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, and "the ALJ's observations concerning these questions are given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984).

**B. Whether the ALJ's Findings Regarding the Severity of Plaintiff's Mental Impairments are Supported by Substantial Evidence**

At step two of the sequential process, the ALJ found that Plaintiff's depression and anxiety were "severe impairments" within the meaning of the regulations. (AR 17, Finding 3). An ALJ must document his evaluation of a claimant's mental impairments by using the special technique described in 20 C.F.R. § 404.1520a (effective August 1, 2006). Pursuant to §404.1520a, the evaluation process

---

[3]An ALJ has a duty to consider all medically determinable impairments throughout the sequential evaluation process, not just those that are severe, see 20 C.F.R. §§ 404.1523, 416.923; Social Security Ruling 96-8p.

for mental impairment requires the Commissioner to rate the degree of functional limitation associated with any medically determinable mental impairment. See 20 C.F.R. §404.1520a(c). In rating the degree of functional limitation, an ALJ must provide findings on the four criteria found in 20 C.F.R. § 404.1520a(c)(3), namely (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); Social Security Ruling 96-8p.

In his decision, the ALJ indicated that he specifically relied on the expert opinions of the Disability Determination Services ("DDS") psychologists in assessing Plaintiff's mental impairments and the severity of Plaintiff's functional limitations. (Tr. 18); see 20 C.F.R. §§ 404.1527(f), 416.927(f). Social Security Ruling 96-6p provides that the opinions of non-examining state agency medical sources, when supported by evidence in the record, should be considered as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims. The DDS psychological experts, Dr. Eleanor E. Cruise, Ph.D., and Dr. Brett Fox, Psy.D., both indicated that Plaintiff's limitations in a variety of categories ranged from "none to moderate." (AR 119, noting that Plaintiff was prescribed anti-depressants; AR 131). The ALJ found, consistent with these opinions, that Plaintiff had moderate limitation in her ability to perform activities of daily living, moderate limitation in her ability to maintain social functioning, moderate limitation in her ability to maintain concentration, persistence, or pace, and no episodes of decompensation. (Tr. 20). The ALJ's findings are consistent with, and supported by, substantial evidence of record.

For purposes of step three, with any "severe" mental impairment, the rating of the degree of functional limitation is then compared to the relevant Listing criteria. *See* 20 C.F.R.

§404.1520a(d)(2). Based on the fact that "no treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity" (AR 18), the ALJ appropriately found that Plaintiff did not have any impairment that met or medically equaled any listing. Plaintiff does not point to any evidence to the contrary.

**C. Whether the ALJ's RFC Findings are Supported by Substantial Evidence**

The ALJ is responsible for deciding Plaintiff's RFC, i.e., "the most [one] can do despite [one's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Based on the evidence of record, the ALJ found that Plaintiff could perform light work within certain restrictions. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ found that Plaintiff could occasionally climb, stoop, bend, crouch, and crawl. (Tr. 18, Finding 5). The ALJ did not include any restriction on "reaching" because Plaintiff had no physical limitation for that ability. The ALJ appropriately relied on the opinions of Dr. William Farley and Dr. Joel Dascal, the DDS physicians, indicating that Plaintiff had no limitation in reaching. (Tr. 141, 146). Plaintiff points to no evidence suggesting otherwise.

The full range of light work requires a "good deal of walking or standing", see 20 C.F.R. §§ 404.1567(b), 416.967(b), described as standing and/or walking for six hours in an eight hour workday. The ALJ found that Plaintiff could perform the requirements of the full range of light work, and thus, did not further assess Plaintiff's ability to sit, stand, walk, lift, carry, push, and pull. See Social Security Ruling 96-8p. Plaintiff's ability to perform the full range of light work was impeded only by the restrictions the ALJ asked the vocational expert to consider at the administrative hearing, specifically "occasional climbing, stooping, bending, crouching, and crawling; simple,

repetitive, and non-detailed tasks; casual and infrequent contact with the public and co-workers; direct and non-confrontational supervision; and infrequent and gradual work place changes." (AR 22, 461). In fact, the ALJ's RFC finding (that Plaintiff retained the physical RFC to perform a range of light work) was more restrictive than the opinions of Dr. Farley and Dr. Dascal, the DDS physicians, who opined that Plaintiff could still perform medium work. (AR 18, 141, 144).[4]

A claimant's daily activities are also relevant to the ALJ's RFC assessment. Social Security Ruling 96-8p. As the ALJ noted, Plaintiff's activities include attending college classes, attending church, watching television, microwaving meals, taking care of her own personal needs, smoking cigarettes, walking for exercise, visiting friends and relatives, and performing household chores. (AR 21, 233, 456, 458). Plaintiff indicated she was able to take care of her own finances. The ALJ concluded that the Plaintiff suffered from, but was not disabled from working, by her impairments.

Although Plaintiff alleges that the ALJ did not consider whether she could perform light work sustained over a five day work week, the very definition of "RFC" provides that an individual will sustain that capacity for eight hours per day, five days per week. See Social Security Ruling 96-8p (RFC is individual's maximum ability to do sustained work activities in ordinary work setting on regular and continuing basis, defined as "8 hours a day, for 5 days a week"). The Commissioner points out that "consequently, the ALJ's finding that Plaintiff retained the RFC for a range of light work was a determination that she could sustain those activities for eight hours per day, five days per week." (Document No. 11, p. 12). Moreover, in his hypothetical question to the vocation expert, the ALJ specifically indicated that Plaintiff had the RFC to perform a range of light work "*on a*

---

[4]Medium work would include lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, pushing and pulling on an unlimited basis, and sitting, standing, and walking for six hours during an eight hour work day. 20 C.F.R. § 404.1567(c).

*sustained basis*." (AR 461, emphasis added).

With respect to non-exertional limitations, the ALJ specifically indicated that Plaintiff's "mental capacity limitations were compatible with the opinion of the State Agency psychologist." (AR 18). The consultative psychological examination performed by Dr. M. Patricia Hogan, reflected that Plaintiff was able to understand and follow directions, had "appropriate affect," had intact remote memory and immediate recall, and had adequate intellectual and arithmetic ability, but had difficulty with delayed recall, concentration, abstract thinking, and judgment. (Tr. 19, 231-234, 265). The DDS psychologist experts, Dr. Brett Fox and Dr. Eleanor E. Cruise, considered Dr. Hogan's consultative examination findings (Tr. 119, 140), and both opined that Plaintiff could still perform simple, routine, and repetitive tasks in a low stress environment (Tr. 18, 119, 138). Both also found that despite her problems, Plaintiff's abilities were either "not significantly limited" or "only moderately limited." (AR 120, 131, 137). The ALJ's decision properly set forth the evidence he was relying on, and his RFC determination is supported by substantial evidence.

**D. Whether the ALJ's Finding that the Plaintiff Could Perform Other Work is Supported by Substantial Evidence**

In the hypothetical question presented to the vocational expert at the administrative hearing, the ALJ limited Plaintiff to "simple, repetitive, and non-detailed tasks; where a coworker and public contact would be no more than casual and infrequent; supervision would be direct and non-confrontational; and, changes in the workplace would be infrequent and gradually introduced." (AR 461). The vocational expert testified that the Plaintiff would still be able to perform jobs, including garment ripper and nut and bolt assembler. (Tr. 461).

Plaintiff alleges that the ALJ's hypothetical question to the vocational expert did not include

Plaintiff's need to alternate between sitting and standing and "all of her mental limitations." (Document No. 9, p. 17-19). The Commissioner notes that Plaintiff does not specify what mental limitations she is referring to. With respect to the alleged need to alternately sit and stand, Plaintiff contends this restriction was established by her "uncontradicted testimony." (AR 459). Plaintiff bases this solely on her own testimony regarding her subjective complaints of pain. However, as already discussed, the ALJ did not find her subjective complaints to be fully credible. (Tr. 18-21).

In formulating a hypothetical question, an ALJ need not include alleged restrictions not warranted by the evidence. If the ALJ finds an alleged limitation not credible or unsupported by substantial evidence, it need not be included in the hypothetical question. *Fisher v. Barnhart*, 181 Fed.Appx. 359, 364, 2006 WL 1328700, at *5 (4th Cir. May 16, 2006). The hypothetical question must reflect the limitations contained in the RFC assessment. Plaintiff does not point to any objective medical evidence showing that she needed to alternate between sitting and standing or that she had any limitations other than those contained in the ALJ's RFC assessment. (AR 171, X-ray showing left knee normal; AR 408 prescribing anti-inflammatory medication).

Although Plaintiff contends that Social Security Ruling 96-9p required the ALJ to specify the frequency with which a claimant needs to alternate between sitting and standing, this is applicable only when an ALJ finds that a claimant actually requires a sit/stand option and is limited to sedentary work. Here, the Plaintiff was found capable of light work. Social Security Ruling 96-9p does not apply to individuals who are eligible for light work. *See, e.g., Justin v. Massanari*, 20 Fed.Appx. 158, 160, 2001 WL 1159739, at * 2 (4th Cir., Oct. 2, 2001).

Plaintiff further argues that the ALJ could not rely on the vocational expert's testimony because the ALJ did not inquire into any possible conflicts between that testimony and the

Dictionary of Occupational Titles ("DOT"). Plaintiff argues that under Social Security Ruling 00-4p, an ALJ has a duty to inquire about conflicts between a vocational expert's testimony and the information contained in the DOT. However, Plaintiff does not identify any alleged conflicts between those two sources, nor were any identified at the hearing. *See Donahue v. Barnhart*, 279 F.3d 441, 446-447 (7th Cir. 2002) (if no conflict identified at hearing, ALJ need not ask vocational expert if conflict exists between her testimony and DOT); *Justin v. Massanari*, 20 Fed.Appx. 158, 160 (4th Cir. 2001) (interpreting SSR 00-4p to require the ALJ to address only evident discrepancies, not to uncover discrepancies); *Haas v. Barnhart*, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004) (emphasizing that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error"); *Brown v. Barnhart*, 408 F.Supp.2d 28, 34-35 (D.D.C. 2006) ("there is substantial and persuasive authority that under SSR 00-4p, the mere failure to ask such a question cannot by itself require a remand").

Finally, although Plaintiff complains that the vocational expert did not provide the DOT numbers that corresponded to the jobs of garment ripper and nut and bolt assembler, Plaintiff has made no showing that she was prejudiced in any way by this alleged deficiency. The Commissioner points out that, under the DOT and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), those jobs are consistent with the ALJ's RFC findings.[5] Specifically, the DOT defines the job of garment ripper as light work requiring no climbing, stooping, crouching, or crawling, and the job of nut and bolt assembler as light work

---

[5] The job of garment ripper has a DOT # of 782.687-038 and the job of nut and bolt assembler has a DOT # of 929.587-010. See U.S. Dep't of Labor, DOT, 817, 949 (4th ed. 1991), available on Westlaw at 1991 WL 680906, 1991 WL 688159.

requiring no more than occasional stooping and no climbing, crouching, and crawling. The vocational expert's testimony supplemented these descriptions with respect to the Plaintiff's remaining limitations, as described in the RFC. Vocational experts "have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs." *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980) (vocational expert testimony may provide "substantial evidence" for purposes of the final step of the requisite disability analysis). The vocational expert was qualified to testify as to what jobs Plaintiff could perform in light of Plaintiff's limitations. The ALJ's decision is supported by substantial evidence. The ALJ relied on the testimony of the vocational expert and found that the Plaintiff could perform other work that existed in significant numbers in the national economy, including the jobs of garment ripper and nut and bolt assembler (Tr. 21 at Finding 10, 22).

## IV. RECOMMENDATION

**IT IS RECOMMENDED** that "Plaintiff's Motion For Summary Judgment" (Document No. 8) should be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 10) should be **GRANTED**; and the Commissioner's decision should be **AFFIRMED**.

## V. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact and conclusions law and the recommendations contained herein must be filed within fourteen (14) days after service of same. Fed.R.Civ.P. 72 (amended, effective December 1, 2009). Responses to objections must be filed within fourteen (14) days after service of the objections. Failure to file objections to this

Memorandum and Recommendation with the District Court will preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

Signed: December 15, 2009

David C. Keesler
United States Magistrate Judge